Hornblower, C. J.
The state of the case, agreed upon, by the parties, exhibits a series of errors and irregularities that are fatal to the proceedings. It is only necessary to notice one ; and that is fundamental, and cannot be overcome. It appears, that upon the application of Stephen Young and others, to three of the judges of the Common Pleas of Cape May, certain persons were appointed commissioners under the act of 11th November, 1789; Rev. L. 89; Elm. Dig. 379; to make partition of certain lands, into two equal parts: one part, to the heirs of Stephen Young deceased; and the other part, to the heirs of Job Young deceased. That then the said commissioners were directed, by their commission, that after they had made such partition, they should proceed and make partition of the part allotted to the. heirs of Stephen Young, into three equal parts : one part to Stephen Young, one part to Uriah Young, and the other part to Henry Young deceased, heirs at law of Stephen Young deceased; and that then they should proceed and divide the part allotted to Henry Young deceased, into five and a half shares, among the heirs of the said Henry Young deceased. Thus, by one commission, directing the commissioners to make three separate partitionsone, between the two original tenants in common ; and then, a subdivision of one share, into several parts; and then another sub-division of one of those parts, into five and a half parts among other persons. Such a commission is wrong for several reasons: it is unauthorized by the statute: would lead to endless confusion, and indeed cannot be executed. In the first place the proceedings in every partition must constitute a separate and distinct record. The act requires, that when the partition has been made, the commissioners shall transmit the *55 writing, containing their appointment, their oaths of office properly certified by the person administering the same, and the map and field books showing the partition, to the judges by whom they were appointed; and when inspected, and (as the act implies) approved by them, they are to be recorded. They must then be separate and distinct commissions, maps and field books. But how can this be done when there is but one commission and the commissioners are to go on and make several partitions among different sets of tenants in common, or joint tenants? Again, the commissioners are to lay before the judges, an account of the expenses, and the judges after ascertaining the whole amount of costs and expenses, are to settle the amount to be paid by each person to whom a share of the land has been allotted. I do not see how this can be done, if the same commissioners are to divide, and sub-divide, and sub-divide again, under the same commission. Surely a person entitled to a small share of but a part of the original tract, ought not to pay an equal share of the whole expenses, not only of the original partition, but of subdivisions among other persons, of portions of the tract in which he has no interest. .Nor do I see, how it is possible to ascertain the separate expenses of the several sub-divisions, so as to divide equally among those taking shares under such sub-divisions, the expense of making the same. Are the judges’ fees on the original application, the expense of advertising, of making the appointment, of swearing the commissioners and of recording the whole proceedings, to be apportioned between the original partition and the several sub-divisions ? If so, it must be done by some rule of arithmetic I have not yet learned. It is no answer to say, that the commissioners may make separate and distinct reports ; for if they do, the same difficulty occurs, since the subdivisions have been made under the same commission, under which the original division was made, and ought therefore, in all fairness, to be subject to an equitable portion of all the preceding and preliminary expenses.
But secondly, the act authorizes the appointment of commissioners to make partition of lands held in coparcenery, joint tenancy, or tenancy in common. But they must be co-tenants of some certain tract of land, capable of being described ; for by the second section of the act, the judge or judges making the *56 appointment, must in the writing containing the same, “describe the tract or tracts to be divided.” But at the time these commissioners were appointed, the heirs of Stephen Young, were only co-tenants of an undivided share of certain tracts of laud; and the heirs of Henry Young, among whom the second subdivision was to be made, were only co-tenants, of an undivided share, of an undivided share of those tracts. In neither instance, therefore could the lands to be divided, be set out or described in the commission. I have already intimated that there were other fatal errors in the case; it is so beyond a doubt, both as relates to the original appointment of commissioners, and to subsequent proceedings of the commissioners, as well as of the judges. But it is unnecessary to specify them. For the reasons already assigned, the whole proceeding must be reversed and set aside.
Dayton, J.
There are numerous exceptions taken to the proceedings in this case. I shall notice but two of them. It appears by the facts agreed upon, that the original appointment of commissioners in this case, to divide the lands in controversy, was not recorded, and it therefore is insisted that the partition must be set aside.
It is inquired by the eighth section of the act entitled “ an act for the more easy partition of lands held by coparceners, joint tenants and tenants in common,” Rev. L. 89, that the commissioners shall transmit the writing, containing their appointment and their oath or affirmation of office, properly certified by the person administering the same, with all their proceedings, to the justice or judges from whom they received their appointment &c. who, after inspecting the same, shall order said instruments to be recorded &c. which shall be good evidence of such partition ; and which partition the act declares shall be as valid and effectual in law, as if the same had been made on writ of partition, according to the course of the common law. The object of this section is, I apprehend, two fold. It is in the first place intended, that the proceedings shall not only be inspected, but approved by the justice or judges &c. and the evidence of such approval, is the order signed by them, that the said instruments be recorded. And in the second place, it is intended that a copy of the original proceedings, recorded as aforesaid, shall *57 be good evidence of the partition. It has been supposed by some, that the only object of the section, was to make such copy legal evidence, and that the record indeed is the only legal evidence under the statute, of such partition. But this construction, founded upon the letter of the law, is too narrow. It could never have been the intent of the legislature, to give an efficacy to a copy, which the original did not itself possess. After the proceedings are inspected and approved, both the original and a recorded copy are evidence. Although the act does not say in so many words, that the proceedings shall be approved before they beconje competent evidence of the partition ; yet it is fairly to be inferred from the requisition, that they are to be inspected <fec. the only object of which must be to see if they be right. This construction, moreover, makes the practice under this statute, analogous to the practice under the acts of 13th June, 1820, Rev. L. 776, and 10th March, 1836, Har. Pam. 99, which prescribe the mode of proceeding upon application for partition, to the Orphans’ Court, and Surrogate General; where it is expressly required that a report be made by the commissioners, approved by the court, and then recorded, and the record is made evidence; but certainly the original papers, after approval, are likewise evidence. If this be the proper construction of the eighth section of the act under consideration, the failure to record the appointment and other instruments of writing after approval, would not of itself invalidate the proceeding; it would have been a mere neglect of duty in the clerk.
But if I understand the facts of this case, it was not the original appointment which it was the duty of the judges to order to be recorded. Two of the commissioners first named, having refused to proceed and make partition as the judges who made the appointment directed, they made a new appointment, associating two other commissioners with one of those first named, and requiring the three to proceed with the partition. This second appointment of commissioners was recorded, and these were the men by whom the partition purports to have been made: and it was their appointment and their proceedings which the judges were to inspect and the clerk record. The statute does not require that he record any other. There is nothing therefore in this objection.
*58 But there is, I conceive, error in the appointment of those commissioners by whom the partition was made. It appears by the state of the case, that the judges on application &e, nominated three persons as commissioners, and gave notice thereof pursuant to the act. On the day named in the notice, for making objections, the record says, “objections being made to the persons on nomination on account of relationship to some of the heirs, and not knowing but what that objection was a legal objection, and thinking to do unjustly by none; we instead of the persons nominated (and without consulting them on the subject) did appoint in their stead, Jacob G. Smith Esq., Daniel Baily .and David. Kinsey Esq., commissioners &c.” And still another appointment was subsequently made.
The judges in this case were acting under a special statutory authority, and it must appear that they have pursued it strictly.' It can never have been intended that the persons on nomination are to be set aside upon thé mere making of. an objection. If they were so, it would be worse than useless to give notice of the .nomination. Persons interested may have remained away because content with the commissioners named, and yet the suggestion of an objection has defeated that nomination, and other persons been appointed against whom, at least some of the parties in interest, would perhaps have objected. This is not the intent of the law. The second section of the act, provides that if objections are made to the persons nominated or any of them, the justice or justices or judges, should then proceed to hear and determine such objections, and in case he or théy find them well founded then appoint others &c. Now it does not appear that they heard and determined said objection, and found it well founded. They say, they did not know but the objection was a legal one, and thinking to do unjustly by none, they appointed other commissioners in place of those nominated. But before they can do this, they must not merely doubt about the legality of an objection, but must hear, determine and judicially adjudge that the objection is well founded, not only in fact but in law. It does not appear that the fact of relationship was in any way verified.before the judges, but the inference from the record is clearly otherwise. I should suppose from the phraseology used, that the objection being suggested, the judges not knowing but *59 that it was a legal one, at once substituted other commissioners in place of those named. If this were so, it was without authority and all the subsequent proceedings are invalid, and must be set aside.
Ford, White and Nevius, justices, concurred.

Proceedings set aside.